UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN POLK,
      Plaintiff,

      v.

SHERWIN-WILLIAMS COMPANY,
      Defendant.

No. 3:16-cv-1491 (MPS)

## MEMORANDUM OF DECISION

Plaintiff John Polk filed this lawsuit against his former employer, the Sherwin-Williams Company ("Sherwin-Williams"), claiming racial discrimination and retaliation in violation of the Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq*., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-60, *et seq.* (ECF No. 1.) On October 18, 2016, Sherwin-Williams filed a "motion to enforce" an un-executed settlement agreement allegedly entered into by the parties before the lawsuit was filed. (ECF No. 20.) As explained below, I treat this motion as a motion for summary judgment based on a defense of release. And because a reasonable juror could find that the parties did not intend to be bound by the settlement agreement until it was signed, I DENY the motion.

### I.    Legal Standard

A "motion to enforce" is not the proper vehicle for Sherwin-Williams' argument regarding the alleged settlement agreement, because the agreement was allegedly reached at a time when no case was pending in any court. "'A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case *that was pending before it.*'" *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, 2011 WL 5533328, at *3 (S.D.N.Y. Aug. 31, 2011) (quoting *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir.1974)) (emphasis added);

1

*see also Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir. 1986) ("A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings.") The court's authority does not extend to agreements reached at a time it does not have jurisdiction over the case.  Indeed, after a case has been dismissed, "there are only two ways in which a district court may retain ancillary jurisdiction to enforce the terms of a settlement agreement: it may expressly retain jurisdiction over enforcement of the agreement in an order of the court, or it may incorporate the terms of that agreement in such an order." *Hendrickson v. United States*, 791 F.3d 354, 359–60 (2d Cir. 2015) (citation, quotation marks, and alteration omitted). Summary enforcement authority does not extend to a private settlement agreement reached *prior* to the start of litigation, such as the agreement at issue here. *See also Roberson v. Giuliani*, 346 F.3d 75, 80 (2d Cir. 2003) ("[T]he enforcement of a [private] settlement agreement normally proceeds in state courts unless there is an independent basis for federal jurisdiction.")[1]

Instead, I treat Sherwin-Williams' motion as a motion for summary judgment, based on what I anticipate will be a defense of release, although Sherwin-Williams has not yet filed an answer. *See, e.g. Ferguson v. Ferrante*, 664 F. App'x 58, 60 (2d Cir. 2016) (summary order) (reviewing defendant's motion for summary judgment based on argument that prior settlement agreement had released him from all claims in the action). Under Federal Rule of Civil Procedure 56(b), "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery," including before filing an answer. *See* Advisory Committee's Note to 1946 Amendment to Fed. R. Civ. P. 56; *see also Weldon v. United States*, 845 F. Supp. 72, 81 n.9

---

[1] There is no issue here about whether the Court has jurisdiction over this action, which includes a federal claim under Title VII.

(N.D.N.Y. 1994) (affirmative defenses may be presented in pre-answer motions).  Where "matters extrinsic to the pleadings have been presented to and not excluded by the court, and the parties have been given reasonable opportunity to present all material pertinent to the issues raised by this motion, the court will treat the motion as one for summary judgment." *Bloomquist v. Brady*, 894 F. Supp. 108, 113 (W.D.N.Y. 1995). Here, the parties have presented evidence outside of the pleadings regarding the purported settlement agreement, and have jointly stated that "neither discovery, nor an evidentiary hearing, is required in advance of the Court's consideration of Defendant's Motion." (ECF No. 25 at 1.)

In reviewing Sherwin-Williams' motion for summary judgment, I must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013) (citation and quotation marks omitted). Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000) (citation and quotation marks omitted). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (citation and quotation marks omitted).

II.     **Undisputed Facts²**

Sherwin-Williams terminated Mr. Polk's employment on February 24, 2015. (ECF No. 20-2 at 2.) On April 17, 2015, Attorney Robert M. Fortgang, then counsel for Mr. Polk, wrote a letter to Sherwin-Williams. (*Id*. at 2-4.) Mr. Fortgang claimed that Mr. Polk had been wrongfully terminated and requested "negotiation, the ultimate objective of which would be the execution of a Severance Agreement and Release of All Claims." (*Id.* at 3.)

The parties apparently engaged in the requested negotiations, and on June 30, 2015, Mr. Fortgang emailed Sherwin-Williams' counsel, stating:

> Our client has accepted Sherwin-Williams' offer of: (1) one month of severance; (2) outplacement counseling; and (3) reclassifying Mr. Polk's reasons for termination from "gross misconduct" to a "mutual voluntary separation from Sherwin-Williams." In this regard, kindly provide an agreement at your earliest convenience.

(*Id.* at 7.) Mr. Fortgang also requested "an employment reference that coincides with the agreement that his separation was a mutual decision to voluntarily separate… as soon as possible." (*Id.*) Sherwin-Williams' counsel replied the same day, asking how the severance should be allocated and stating, "[a]s far as employment references go, we have work verification service that will confirm his dates of employment and position held; we will not comment further. This is consistent with Company policy." (*Id.* at 6-7.) Fifteen minutes later, Mr. Fortgang responded, describing the desired severance allocation and providing a copy of his law firm's W-9. (*Id.* at 6.)

On July 10, 2015, an associate of Mr. Fortgang wrote to Sherwin-Williams' counsel, "to follow up on the status of Mr. Polk's settlement agreement," asking, "When can we expect said

---

² The following facts are based on the correspondence and draft agreements attached to Sherwin-Williams' motion (ECF No. 20). In his brief in opposition (ECF No. 21), Mr. Polk does not dispute the accuracy of these documents, and the parties have jointly stated that "neither discovery, nor an evidentiary hearing, is required in advance of the Court's consideration of Defendant's Motion." (ECF No. 25 at 1.) I therefore treat these facts as undisputed for purposes of the summary judgment ruling.

document?" Then, on July 22, 2015, Sherwin-Williams' counsel responded by emailing a draft

settlement agreement to Mr. Fortgang. (*Id.* at 11-18.) In the body of the email, counsel wrote,

"Please let me know if you wish to discuss. Otherwise, please execute and return to me so I can

process the payment." (*Id.* at 11.)

Mr. Fortgang replied with proposed revisions on July 27, 2015:

On June 30th I wrote to you on behalf of my client accepting Sherwin Williams' offer of: (1) one month of severance; (2) outplacement counseling; and (3) reclassifying Mr. Polk's reasons for termination from "gross misconduct" to a "mutual voluntary separation from Sherwin-Williams." As currently written, the Separation Agreement lacks any reference to outplacement counseling and the reclassification of Mr. Polk's termination. Can you please revise the Agreement to reflect said terms.

(*Id.* at 20.)

On July 28, 2015, Sherwin Williams' counsel sent a revised draft, which contained the

substantive provisions discussed via email: (1) an agreement to provide payment "[w]ithin

fourteen (14) days of [Mr. Polk's] delivery of an executed copy of this Agreement to Sherwin-

Williams;" (2) an agreement to provide outplacement services "[w]ithin fourteen (14) days of Mr.

Polk's execution and return of this agreement;" and (3) the reclassification of termination. (*Id.* at

21-22.)

Other provisions of the document remained from the July 22, 2015 draft. These included

agreements that Mr. Polk would (1) not seek reemployment with Sherwin-Williams or any of its

subsidiaries; (2) keep the agreement confidential, a provision described as "material… without it,

the Agreement would not exist"; (3) release "all claims, causes of action, suits, contracts, promises,

or demands of any kind, which [Mr. Polk] may now have up to the date of execution of this

Agreement, whether known or unknown, intentional or otherwise…."; and (4) represent that he

was unaware of any claim for which Sherwin-Williams "could be liable for medical expenses

incurred by him before or after the execution of this Agreement." (*Id.* at 22-25.)

The document further provided that:

> After executing this Agreement, [Mr. Polk] will have seven (7) days to revoke the release of his age discrimination claim under the Age Discrimination in Employment Act (only).... Mr. Polk's release of all other claims in this agreement is not revocable and shall be immediately effective upon execution of this agreement.

(*Id.* at 25.) And it included a merger clause stating: "[t]he Parties agree that this Agreement is the entire agreement and supersedes and replaces any prior or contemporaneous representations or agreements, whether written or oral, except the Confidentiality Agreement into which Mr. Polk previously executed with Sherwin-Williams." (*Id.* at 24.) The parties agree that this written agreement was never signed. Mr. Polk subsequently retained new counsel, and on September 1, 2016, filed this lawsuit. (ECF No. 1.)

## III.    Discussion

Construing the facts in the light most favorable to Mr. Polk and resolving all ambiguities in his favor, a reasonable juror could conclude that the parties did not intend to be bound by the settlement agreement until it was executed. Therefore, based on the existing record, Sherwin-Williams cannot succeed on an affirmative defense of release at summary judgment.

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). To determine whether a settlement is binding absent an executed document, a court "must consider (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d

320, 323 (2d Cir. 1997) (internal citation omitted).[3] While "no single factor is decisive, where there is a writing between the parties showing that one party did not intend to be bound a court need look no further than the first factor." *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011) (summary order) (internal citations, quotation marks, and alterations omitted).

### A.  *Express Reservation*

As for the first factor, the unsigned written agreement itself provides evidence that the parties reserved the right not to be bound in the absence of a signed writing. The Second Circuit has explained that "wording in a settlement agreement that places great significance on the execution date evinces an intent not to create a binding settlement until some formal date of execution." *Kaczmarcysk*, 414 F. App'x at 355 (quoting *Ciaramella*, 131 F.3d at 324) (alterations omitted). Just as in *Kaczmarcysk* and *Ciaramella*, the unsigned agreement in this case contains a merger clause (ECF No. 20-2 at 24)—"persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Id.*  And, just as in *Kaczmarcyzk* and *Ciaramella*, the agreement provides that it is effective when it has been signed by all parties: "Mr. Polk's release of all other claims in this Agreement is not revocable and shall be immediately effective upon execution of this Agreement." (ECF No. 20-2 at 25.)[4] "Finally, "execution" is used as a key demarcation point in other places in the document—for example, payment and

---

[3] As in *Ciaramella*, 131 F.3d at 322, I need not decide whether state or federal common law applies, because the parties do not suggest there is any material difference between the applicable standards and rely on the *Ciaramella* factors.

[4] In his brief in opposition, Mr. Polk points to a section of the agreement that provides: "After executing this Agreement, [Mr. Polk] will have seven (7) days to revoke the release of his age discrimination claim under the Age Discrimination in Employment Act (only)." (ECF No. 20-2  at 25.) That particular text is not relevant to this case, because it applies only to claims under the Age Discrimination in Employment Act, not the racial discrimination claims at issue here.

outplacement services are to be delivered within 14 days of execution, and the release covers

claims "up to the date of execution." (*Id.* at 21-22.)

The parties' correspondence also suggests that they did not intend to bind themselves until

the agreement had been signed.  As a preliminary matter, in his April 17, 2015 letter, Mr. Fortgang

described the "ultimate objective" as "the execution of Severance Agreement and Release of All

Claims"—suggesting that he envisioned a comprehensive settlement agreement signed by all

parties as the way to resolve the matter. (*Id.* at 3.) While "[t]he mere intention to commit an

agreement to writing will not prevent contract formation prior to execution," *Winston v. Mediafare

Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985), the letter nevertheless provides a clue to Mr. Polk's

intent in later discussions.

Next, in an email on June 30, 2015, after telling Sherwin-Williams that "[o]ur client has

accepted Sherwin-Williams' offer," Mr. Fortgang stated, "kindly provide an agreement at your

earliest convenience." (ECF No. 20-2 at 7.) That language is ambiguous: as Sherwin-Williams

argues, it could mean that the "agreement" will just be a memorialization of already-agreed-to

terms;[5] or it could be that the "offer" and "accept" were just the basic skeleton, and all would be

subject to negotiation and signing of a comprehensive agreement. Other language in the same

email arguably suggests the latter interpretation, particularly when reasonable inferences are drawn

in Mr. Polk's favor. First, in the same email, Mr. Fortgang made a new request—that Sherwin-

Williams provide contact information for someone who could confirm Mr. Polk's prior

employment and report that the separation was a "mutual decision to voluntarily separate." (*Id.*)

Perhaps more significantly, absent from the record—and from this email—is any indication of

---

[5] *See, e.g. Powell*, 497 F.3d at 130 (where counsel stated at a hearing that "parties have agreed that
the formal settlement documents will incorporate the following terms and conditions," the Second
Circuit held that "the settlement's reduction to writing was only a formality.").

what the other terms of the agreement might be. And while many of the terms ultimately proved

to be "boilerplate" (and thus would not have hindered enforcement by their absence), some were

arguably more important, the sort of terms that are often the subject of negotiation in settlements.

For example, the confidentiality provision was unilateral and explicitly stated that it was

"material," the release was broad in scope, and the agreement provided that Mr. Polk could not

reapply for any future employment with Sherwin-Williams or its subsidiaries. (*Id.* at 22-24.)

Subsequent emails similarly imply that the negotiations had not concluded by the time Mr.

Fortgang wrote to "accept" the offer on June 30, 2015. Sherwin-Williams' counsel's response on

June 30, 2015 made clear that it would not agree to handle the reference quite in the same way that

Mr. Fortgang had requested: it would use an outside service to confirm only dates and position.

(*Id.* at 7.) In an email sent July 10, 2015, Mr. Polk's counsel describes the "settlement agreement"

as the "document" they are waiting for—not as something that has already been agreed to and is

just being memorialized. (*Id.* at 11.) And when Sherwin-Williams' counsel sent the first draft

agreement on July 22, 2015, she wrote: "Please see attached.... Please let know if you wish to

discuss.  Otherwise, please execute and return to me so I can process the payment." (*Id.*)  A

reasonable juror could infer two things from this language: (1) the text of the agreement was open

to negotiation ("please let me know if you wish to discuss.  Otherwise ...")—in other words, it was

not a done deal; and (2) until the document was signed, Sherwin-Williams would not "process the

payment."  Both of these suggest the parties did not expect to be bound until the document was

executed. Admittedly, Mr. Fortgang's last email, on July 27, 2015—objecting to the absence of

two provisions originally mentioned in his June 30, 2015 email—might suggest that he (on behalf

of his client) had no further objections, and thus that the July 28, 2015 draft addressing his

objections should have been acceptable to him, but that is not a necessary inference.  Nothing in

his email stated "everything else looks good" or "we have a deal" or anything else similar.

### B. Partial Performance

As for the second factor, there does not appear to be any partial performance. There is no

evidence in the record to support Sherwin-Williams' claim that they "took measures to change

[Mr. Polk's] status from termination for 'gross misconduct' to 'mutual voluntary separation.'"

(ECF No. 20-1 at 6.)

### C. Terms Remaining to be Negotiated

The parties did agree to important material terms, such as payment and outplacement

counseling. However, as noted above, at least arguably material provisions of the agreement, such

as confidentiality, scope of release, and the re-application provision, were not agreed upon

beforehand. *See Powell*, 497 F.3d at 130 ("even minor or technical changes arising from

negotiations over the written language of an agreement can weigh against a conclusion that the

parties intended to be bound absent a formal writing. Such changes are relevant, however, only if

they show that there were points remaining to be negotiated such that the parties would not wish

to be bound.") (citation and quotation marks omitted).

### D. Type of Agreement

Finally, a severance agreement with a release following a threatened lawsuit is the type of

agreement that is ordinarily expected to be in writing. "Settlements of any claim are generally

required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131

F.3d at 326. Sherwin-Williams argues that the agreement *was* reduced to writing, and cites a

district court case where an agreement was found to be enforceable because "even if the agreement

is the type that is typically reduced to writing, the written draft of the settlement had essentially

10

been finalized, since [plaintiff's counsel] had requested the draft adopt the… model format" used

in a prior case. *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 251 (E.D.N.Y. 2002).

However, in other decisions, such as *Ciaramella*, *Winston,* and *Kaczmarcysk*, the existence of a

draft agreement did not support enforcement. For example, the *Ciaramella* court held that the

fourth factor weighed against enforcement, even in a situation where "[plaintiff's attorney] made

several suggestions for revision to [defendant] which were incorporated into a revised draft. After

reviewing the revised draft, [plaintiff's attorney] asked for a few final changes and then allegedly

stated to [defendant's] lawyer, 'We have a deal.'" 131 F.3d at 321.

In short, a reasonable juror could find that the parties did not "intend[] to be bound in the

absence of a document executed by both sides." *Winston*, 777 F.2d at 80. Therefore, Sherwin-

Williams cannot succeed on this record on an affirmative defense of release.

## IV.      Conclusion

For the foregoing reasons, Sherwin-Williams' Motion (ECF No. 20) is DENIED. An

answer or other responsive pleading is due within 30 days.


IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              March 29, 2017