UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN POLK,                          :
                                    :
      Plaintiff,                    :
                                    :
      v.                            :      CASE NO.  3:16cv1491(MPS)
                                    :
SHERWIN-WILLIAMS, CO.,              :
                                    :
      Defendant.                    :

RULING ON DEFENDANT'S MOTION TO COMPEL

Plaintiff, John Polk ("Polk"), filed this lawsuit against his former employer, the Sherwin-Williams Company ("Sherwin-Williams"), claiming racial discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-60, et seq. (Doc. #1.)  Pending before the court is Sherwin-Williams' motion to compel.  (Doc. #45.)[1] For the following reasons, defendant's motion to compel is GRANTED IN PART AND DENIED IN PART.

I.   Background

Sherwin-Williams terminated Polk's employment on February 24, 2015. (Doc. #27 at 4.) On April 17, 2015, Attorney Robert M. Fortgang of Robert Fortgang Associates, LLC ("Fortgang"), then counsel for Polk, wrote a letter to Sherwin-Williams. Attorney

---

[1] U.S. District Judge Michael P. Shea referred the motion to the undersigned.  (See doc. #39 and #40.)

Fortgang said that Polk had been wrongfully terminated and requested "negotiation, the ultimate objective of which would be the execution of a Severance Agreement and Release of All Claims." (Id.) The parties apparently engaged in settlement negotiations for several months. At some point, Polk decided to retain new counsel, Attorney John Williams, and on September 1, 2016, Polk filed this lawsuit. (Id. at 4-6.)

On October 18, 2016, Sherwin-Williams filed a "motion to enforce" an un-executed settlement agreement allegedly entered into by the parties before the lawsuit was filed. (Doc. #20.) The court, treating the motion as a motion for summary judgment based on a defense of release, denied the motion, holding that a reasonable juror could find that the parties did not intend to be bound by the settlement agreement until it was signed. (Doc. #27 at 1.) The court ordered defendant to answer the complaint, and the parties thereafter engaged in discovery.

In its Amended Answer and Affirmative Defenses, defendant asserted as its fourteenth affirmative defense the following:

> Plaintiff has already fully settled his claims with Defendant, and released all claims against Defendant, including, but not limited to, its officers, affiliates, employees, and subsidiaries, relating to his employment with Defendant and separation therefrom.

(Doc. #32 at 5.)  On August 1, 2017, defendant served a subpoena

duces tecum (doc. #45-2) on plaintiff's former counsel, Fortgang,

seeking:

> documents and communications that may show, among other
> things, that Plaintiff actually signed the agreement, that he
> intended to be bound by the terms of the agreement (with or
> without an executed copy), or that he agreed to all of the
> terms of the written agreement provided by Defendant to
> Fortgang Associates.

(Doc. #45-1 at 6.) The same day, plaintiff filed an "emergency"

motion for protective order, which the court denied on August 2,

2017, without prejudice for failure to comply with discovery

dispute procedures.  (Doc. #38.)  Thereafter, Fortgang served

objections to the subpoena, objecting on grounds of attorney-

client and attorney work product privileges, and provided a

privilege log.  (Doc. #45-8 and ##45-3.) Plaintiff adopted the

privilege log submitted by his former counsel, with certain

revisions.    (Doc.  #46  at  7-15.)  The  parties  submitted

correspondence to the court in accordance with its discovery

dispute procedures, and after the parties were unable to arrive at

an informal solution during a telephone conference with the court,

the defendant filed a motion to compel (doc. #45), to which

plaintiff objected (doc. #46).

Upon review of the parties' papers, the court ordered

plaintiff to produce the documents in question for <u>in camera</u>

review.   (Doc. #44, #47, #50 - #53.)   On February 24, 2018,

plaintiff submitted for review 105 hand-numbered documents.[2]

II.  Legal Standard

   "Where, as here, there is federal question jurisdiction, the

court must apply federal common law with respect to attorney-

client privilege. Fed.R.Evid. 501." Leone v. Fisher, No. 3:05CV521

(CFD)(TPS), 2006 WL 2982145, at *3 (D. Conn. Oct. 18, 2006).  "The

privilege protects not only the advice of the attorney to the

client, but also the information communicated by the client that

provides a basis for giving advice."  Chen-Oster v. Goldman, Sachs

& Co., 293 F.R.D. 547, 554 (S.D.N.Y. 2013). "[I]n order to invoke

the attorney-client privilege, a party must demonstrate that there

was: (1) a communication between client and counsel, which (2) was

intended to be and was in fact kept confidential, and (3) made for

the purpose of obtaining or providing legal advice."  Rapkin v.

Rocque, 87 F. Supp. 2d 140, 143 (D. Conn. 2000) (internal quotation

marks omitted).  "It is axiomatic that the burden is on a party

claiming the protection of a privilege to establish those facts

---

[2] The original documents were assembled haphazardly and without
Bates numbers.  The court ordered plaintiff to arrange them
chronologically and re-submit only those documents that had been
withheld from production, in chronological order and numbered
sequentially.  (Doc. # 50, 51, 52 and 53.) Plaintiff eventually
submitted 105 hand-numbered documents in chronological order.
(Doc.  #54.)  The numbered documents produced for inspection do
not correspond to the privilege log and revised log, which list
documents without numbers. (Doc. #45-3 and #46 at 7-15.)

4

that are the essential elements of the privileged relationship .
. . . a burden not discharged by mere conclusory or ipse dixit
assertions." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750
F.2d 223, 224-25 (2d Cir. 1984). "Any ambiguities as to whether
the essential elements have been met are construed against the
party asserting the privilege." Koumoulis v. Indep. Fin. Mktg.
Group, Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd, 29 F. Supp.
3d 142 (E.D.N.Y. 2014).

"The work product doctrine is distinct from and broader than
the attorney-client privilege." United States v. Nobles, 422 U.S.
225, 238 n. 11 (1975) (citing Hickman v. Taylor, 329 U.S. 495, 508
(1947)). The work product doctrine shields from disclosure
documents and other materials prepared in anticipation of
litigation or trial by a party or a party's representative, absent
a showing of substantial need and the inability to obtain the
substantial equivalent without undue hardship. Fed.R.Civ.P.
26(b)(3)(A); see also In re Grand Jury Subpoenas Dated Oct. 22,
1991 and Nov. 1, 1991, 959 F.2d 1158, 1166 (2d Cir. 1992). "Where
a document was created because of anticipated litigation, and would
not have been prepared in substantially similar form but for the
prospect of that litigation, it falls within Rule 26(b)(3)."
United States v. Adlman, 134 F.3d 1194 (2d Cir. 1998).

"[T]he work-product doctrine [also] shelters the mental
processes of the attorney, providing a privileged area within which

he can analyze and prepare his client's case." <u>Nobles</u>, 422 U.S. at 238. "An attorney's protected thought processes include preparing legal theories, planning litigation strategies and trial tactics, and sifting through information." <u>Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.</u>, 9 F.3d 230 (2d Cir. 1993). The doctrine extends to notes, memoranda, correspondence, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney. <u>See</u> <u>Nobles</u>, 422 U.S. at 238–39; <u>Carter v. Cornell Univ.</u>, 173 F.R.D. 92, 95 (S.D.N.Y. 1997).

These privileges, however, cannot be used both as a shield and as a sword. Here, plaintiff maintains that he did not agree to settle his claims with Sherwin-Williams (doc. #21 at 2), yet he refuses to produce communications with the attorneys whom he retained to negotiate a settlement with Sherwin-Williams. By asserting that Fortgang did not have authority to settle with defendant on his behalf, he has waived his attorney-client privilege with respect to communications about settlement. <u>See</u> <u>Bagley v. Searles</u>, No. 3:06cv480 (PCD), 2007 WL 184720, at *2 (D.Conn. Jan. 19, 2007) (holding that where plaintiff claimed he entered into a settlement agreement under duress, "[p]laintiff has therefore waived his attorney-client privilege insofar as conversations with [his attorney] are germane to Plaintiff's claim regarding the enforceability of the Settlement Agreement.") <u>See</u> <u>also, e.g.</u>, <u>Rubel v. Lowe's Home Centers, Inc.</u>, 580 F. Supp. 2d

626, 629 (N.D. Ohio 2008) (holding that "[c]onveyance of settlement authority from client to counsel is never intended to be confidential.").

Further, to the extent the communications were intended to be communicated to a third-party, they are not privileged. See United States v. Tellier, 255 F.2d 441, 447 (2d Cir. 1958)(holding that "it is well established that communications between an attorney and his client, though made privately, are not privileged if it was understood that the information communicated in the conversation was to be conveyed to others."); Robbins & Myers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 83 (W.D.N.Y. 2011)(holding that communications between client and attorney intended for publication or communication to third-parties, are not intended to be confidential when made in order to obtain legal assistance," citing Tellier, 255 F. 2d at 447); Ceglia v. Zuckerberg, No. 10-CV-00569A F (LGF), 2012 WL 1392965, at *2, (W.D.N.Y. Apr. 19, 2012) (same, citing Robbins), aff'd, No. 10-CV-00569 (RJA), 2012 WL 3527935 (W.D.N.Y. Aug. 15, 2012).

III.  Discussion

In accordance with the principles discussed above, the court rules as follows:

A. Communications between Fortgang and Stacy A. Hinners, defendant's in-house counsel

Communications between counsel for the plaintiff and counsel for the defendant are not privileged.  It is unclear why plaintiff withheld them, and presumably defendant already has copies of those communications.  The objections are overruled.  Documents Bates numbered 39, 48, 49, 51, 52 – 54, 73 – 75, 76, 81, 85 – 88, 91, 93, 95 – 98 should be produced.  In some instances, lawyers at Fortgang forwarded these documents to one another and commented upon them (documents Bates numbered 40, 50, 72, 80 and 82).  Their comments are protected and may be redacted.[3]

B. The retainer agreement between Fortgang and John Polk

Plaintiff objects to producing his retainer agreement on grounds of attorney-client privilege and attorney work product, and produced a redacted copy of the letter containing only the letterhead, address, greeting and signature lines.  (Doc. #46 at 7, 13, 17-18.)

> [A] long and unbroken line of cases in this
> Circuit have established that "in the
> absence of special circumstances, fee
> arrangements do not fall within the

---

[3] The portions of the emails containing lawyers' comments which may be redacted are as follows:
Doc.  Bates numbered 40, top portion, email from R. Fortgang to K. Roy; Doc.  Bates numbered 50, top portion containing emails between R. Fortgang and K. Roy; Doc. Bates numbered 72, top portion, email from K. Roy to R. Fortgang; Doc. Bates numbered 80, top portion containing emails between R. Fortgang and K. Roy; and Doc. Bates numbered 82, top portion, email from K. Roy to R. Fortgang.

attorney-client privilege because they are
not the kinds of disclosures that would not
have been made absent the privilege and
their disclosure does not incapacitate the
attorney from rendering legal advice."

Torres v. Toback, Bernstein & Resiss LLP, 278 F.R.D. 321, 322
(E.D.N.Y. 2012)(quoting Vingelli v. United States, 992 F.2d 449,
452 (2d Cir. 1993) and holding that retainer agreement between a
debt collection firm and its client was not subject to attorney-
client privilege, where identity of firm's client was not secret,
nothing of confidential nature would be revealed by production of
agreement, and firm had failed to identify any other special
circumstances warranting application of privilege).  See also
Williams    v.    Rushmore    Loan    Mgmt.    Servs.    LLC,    No.
3:15cv673(RNC)(DFM), 2016 WL 4083598, at *2-3 (D. Conn. Feb. 16,
2016)(requiring production of a redacted version of retainer
agreement, along with in camera inspection of the portion claimed
to contain privileged information regarding discussions between
attorney and client regarding legal strategy); Musante v. USI
Servs., LLC., No. 3:16CV799 (RNC)(DFM), 2017 WL 3189028, at *2 (D.
Conn. July 27, 2017) (holding that  the "retainer agreement is not
privileged and there is no basis upon which to defer its
production.").

        The objection is overruled.  Plaintiff shall produce a copy
of the retainer agreement (doc. Bates numbered 29-32).

C. Written communications between plaintiff and Fortgang attorneys, and related discussions between Fortgang attorneys

Plaintiff withheld numerous communications between him and his counsel at Fortgang and between attorneys at Fortgang on grounds of attorney-client and/or attorney work product privileges.  The objections are overruled with respect to documents containing information regarding plaintiff's discussion of settlement terms and authorization to his counsel to settle his claims against Sherwin-Williams, as well as his decision to terminate his representation with Fortgang.  Documents Bates numbered 77-79, 83, 84, 89, 90, 92, 94, 99, 100, 102, and 104 shall be produced.  Doc. 101 shall be produced other than the third and fourth sentences of the first paragraph beginning with "when" through the end of the first paragraph, as those two sentences contain discussions between plaintiff and Attorney Fortgang about evidence.  The objections are sustained with respect to documents Bates numbered 9-28, 33-38, 41-47, 55-69, and 70-71, as these documents contain privileged communications involving case strategy, fact gathering and the like, which do not involve settlement terms and settlement authorization.

D. Handwritten notes by attorneys at Fortgang

Plaintiff withheld eight pages of undated notes prepared by Attorney Katie Roy of Fortgang regarding damage calculations, plaintiff's commissions, and the contents of his personnel file

10

(documents Bates numbered 1-8). These documents do not appear to relate to discussions regarding settlement or settlement authority. Rather, they appear to be a summary of information obtained from plaintiff in order to formulate a case strategy, as well as Attorney Roy's thoughts. See Section II above. As such, the documents Bates numbered 1-8 are protected by the attorney-client and/or attorney work product privileges, and the objection to their production is sustained. See cases cited above.

E. Written communications between Fortgang and plaintiff's current counsel, Attorney John Williams.

Plaintiff withheld two documents, (Bates numbered 103 and 105), which, other than a corrected email address, appear to be duplicates of each other, containing an August 20, 2015 email communication from Fortgang to Attorney John Williams, plaintiff's current counsel. The court finds nothing in these emails to be privileged. In the emails, Attorney Fortgang conveys information regarding a statement Sherwin-Williams' counsel made to him regarding her view that an enforceable settlement agreement exists. Additionally, he discusses payment arrangements, attaching a copy of his retainer agreement with plaintiff. The objections to production of these documents are overruled, and plaintiff shall produce documents Bates numbered 103 and 105.

IV.    Conclusion

The defendant Sherwin-William's Motion to Compel [45] is GRANTED IN PART AND DENIED IN PART as set forth above.  This is not a recommended ruling.  This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); and Rule 72.2 of the Local Rules for Magistrate Judges.  As such, it is an order of the court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Hartford, Connecticut this 4th day of June, 2018.


_____/s/_____

                              Donna F. Martinez
                              United States Magistrate Judge